IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID JEROME JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:07-0614 |
| ) | Judge Trauger |
| GRAY'S DISPOSAL CO., INC. and ) | |
| EDWIN GRAY, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM

Pending before the court are the defendants' Motion for Summary Judgment (Docket No. 76) and the plaintiff's Motion to Exclude Exhibits (Docket No. 80). For the reasons discussed herein, the defendants' Motion for Summary Judgment will be granted in part and denied in part, and the plaintiff's Motion to Exclude Exhibits will be denied as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Gray's Disposal Co., Inc. ("Gray's Disposal") is a Tennessee corporation engaged exclusively in the collection and disposal of garbage and other waste in the City of Nashville, Tennessee and surrounding counties.[1] The plaintiff, David Jackson, is forty-seven

---

[1] Unless otherwise noted, the facts are drawn from the parties' statements of material facts (Docket Nos. 78, 83, 84 and 92) and related affidavits and exhibits. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

1

years old and worked on and off for Gray's Disposal beginning in 1998. Defendant Edwin Gray manages Gray's Disposal and formally hired Jackson as a part-time employee in 2004. In June 2005, Gray promoted Jackson to a full-time employee. During his employment, Jackson orally negotiated his pay (and any pay raises) directly with Gray, and Jackson was paid twice per month. For instance, in January 2006, Jackson's salary was $2,600 per month, or $1,300 per pay period. If Jackson's semi-monthly paycheck was for less than the agreed-upon amount, Gray paid Jackson the difference in cash or personal check.

As a Gray's Disposal employee, Jackson picked up and delivered garbage and performed mechanical work on the garbage trucks and other vehicles. Monday through Friday, Jackson left his house early in the morning, picked up his garbage truck (usually from the lot at Gray's Disposal), collected garbage along an assigned route, and, when the truck was full or the route was complete, Jackson took the garbage to one of two disposal locations. When Jackson dropped off the garbage each day, he received a disposal, or "dump," ticket from the disposal facility, which documented the time that Jackson dropped off the garbage.

When he left the disposal facility, Jackson drove the truck to a gas station and filled the truck with gas. He then drove the truck back to Gray's Disposal. At that point in the day, Jackson did any mechanical work on the trucks and other vehicles that Gray requested, including oil changes and brake jobs. For each mechanical task performed, Gray paid Jackson between twenty and forty dollars, in addition to his salary. If, on a given day, Gray did not need Jackson to stay to work on the trucks, Jackson was free to leave. Jackson claims that he frequently did mechanical work for Gray's Disposal on the weekends and that, on Saturdays, he occasionally

2

drove trucks to the disposal sites. Gray paid him a set amount for those trips, in addition to his salary.

One disputed issue in this case is whether Gray's Disposal improperly denied Jackson overtime pay, and the resolution of this issue depends on the number of hours per week that Jackson worked. There is little "hard evidence" of Jackson's hours. Gray's Disposal retained Xebec Management to manage and distribute its payroll. Gray e-mailed a representative at Xebec twice per month with payment amount information for each employee, and Xebec then paid that employee. In these e-mails, Gray provided no information on the hours that his employees had worked. Also, Gray's Disposal had no location for employees to "punch in" and "punch out" for the day, or, apparently, any time-keeping system whatsoever. Jackson never turned in a "time sheet" and was never paid by the hour.

For his part, Jackson claims that, each day of the Monday through Friday workweek, he generally started work at 4 a.m. in the summer and 6 a.m. in the winter, with his winter start time depending somewhat on the weather. Apparently, Gray did not know what time Jackson started work in the morning. While Jackson's weekly hours varied due to unforeseen delays at the dump sites, Jackson's personal breaks, and the quantity of auto mechanic work Jackson performed during the week, Jackson estimates that, in general, he worked about sixty hours per week, between garbage collection and mechanic work Monday through Friday and mechanic work and disposal trips on the weekends. (Docket No. 79 Ex. 3 at 340-42, 363.) As discussed below, "non-exempt" employees, such as Jackson, are generally entitled to overtime pay if they work more than forty hours per week. Jackson was not paid any money designated as overtime pay while

3

working at Gray's Disposal.

The defendants have little evidence of the actual number of hours that Jackson worked. They challenge Jackson's approximations of his workload by pointing to statements that Jackson made at his deposition, including the statement that his average work week was five days per week (Docket No. 79 Ex. 3 at 316) and the statement that, while he was a full-time employee, his average work day was eight-and-one-half hours. (Docket No. 79 Ex. 2 at 184, 212-13.)

The defendants also rely on the "dump tickets," which purport to show the time each day that Jackson dropped off the garbage he had collected. The defendants argue that, by taking the plaintiff's stated daily start time as true and adding two hours to the time stamp on the dump ticket, a "fair" estimation of the plaintiff's daily (and thereby weekly) hours can be determined. (Docket No. 77 at 3.)[2] Based on this allegedly "fair" estimation, the defendants argue that in only thirteen weeks of the year, in the summer or early fall, did the plaintiff work more than forty hours, that is, any overtime. (*Id*. at 3-4.) At his deposition, Gray testified that Gray's Disposal does not keep all of the dump tickets, saying "we keep all we can keep." (Docket No. 82 Ex. 1 at 84-85.)

On November 9, 2006, while doing mechanic work at Gray's Disposal, Jackson suffered a severe hand injury. Jackson left work and went to the emergency room. Jackson's doctors informed him that his hand injury would limit his work for several months, as he would be unable to pick up garbage or drive the truck. Jackson returned to Gray's Disposal and reported these

---

[2] Two hours is apparently the defendants' estimate as to the average amount of time that it took Jackson to leave the dump site, fill the truck with gas, return to Gray's Disposal and perform his mechanical work for the day.

4

limitations to Gray. Gray and Jackson talked on November 9, and they agreed that Gray would submit Jackson's medical information to the company's workers' compensation carrier, and that Jackson would be removed from the payroll until he was healthy enough to return. Gray did not tell Jackson that he was fired, and Jackson believed that he would return to work once his injuries healed. Jackson received workers' compensation from November 23, 2006 to March 24, 2007, which was around the time when he was cleared to return to work.

During this November 2006 to March 2007 time period, Gray divided up Jackson's route amongst various Gray's Disposal employees. For instance, Jackson's Monday route was divided between Doris Mayes, age 69, and Gray. Mayes ended up driving this route through the latter part of 2007. Gray also temporarily took over Jackson's Tuesday and Wednesday routes, before the Wednesday route was assigned to Richard Brooks, age 41.

During this same time period, Jackson stayed in touch with Gray about when Jackson could return to driving the truck. By March 2007, Jackson grew frustrated because he did not feel that Gray was being pro-active enough about finding him a route to drive. (Docket No. 79 Ex. 3 at 306.) On March 19, 2007, with his workers' compensation benefits about to expire, Jackson filed a claim for unemployment compensation benefits, and, on March 21, 2007, without consulting with an attorney, Jackson filed a charge of discrimination against Gray's Disposal with the EEOC, alleging violations of the Americans with Disabilities Act. The EEOC Charge was later re-characterized as a complaint under the Age Discrimination in Employment Act (ADEA).

Around this same time, in the late winter or early spring of 2007, Jackson returned to work, performing mechanic work but not driving trucks. Jackson still believed that, at some

5

point, Gray would build a truck driving route for him.  Gray, who was apparently unaware of the EEOC Charge, paid Jackson in cash or check for his work during this period and did not put Jackson back on the payroll.  At some point during this period, while working at Gray's Disposal, Jackson noticed that two younger individuals whom Jackson did not recognize were getting out of a Gray's Disposal truck.  This observation is the basis for Jackson's ADEA claim.

On June 6, 2007, still unsatisfied with Gray's treatment of him, Jackson filed this lawsuit. It was not until Gray received notice of this lawsuit (sometime after June 6, 2007) that Gray told Jackson that, because of the lawsuit,  he had to leave work and was not welcome to return. (Docket No. 79 Ex. 3 at 304.)  When Gray told Jackson that he was not welcome to return, Jackson was on Gray's Disposal's property, preparing to do some mechanic work for the company.  (*Id.* at 303.)

As noted above, Jackson filed this suit on June 6, 2007.  He alleges that he was discriminated against on the basis of his age, that was retaliated against for filing for workers' compensation, that the defendants breached a contract with him, and that the defendants did not properly pay him overtime.   The parties engaged in substantial discovery and motion practice, and the defendants filed their Motion for Summary Judgment on January 16, 2009.  Attached as exhibits to that motion are purported to be the dump tickets that Jackson received each day when he dropped off his collected garbage at the various waste sites, along with the defendants' calculation of the overtime Jackson worked, presented in calendar form, and based on the information in the dump tickets.  The plaintiff has moved to strike those exhibits for various reasons.

# ANALYSIS

The plaintiff claims that he was subjected to discrimination on the basis of his age in violation of the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. § 621 *et seq.*, and the Tennessee Human Rights Act (THRA), T.C.A. § 4-21-101 *et seq*. The plaintiff also claims that he was improperly denied overtime pay under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207 (a). The plaintiff also asserts common law claims for retaliatory discharge and breach of contract. The defendants have moved for summary judgment on the plaintiff's claims. For the reasons discussed herein, the defendants are entitled to a judgment as a matter of law on every claim, except for the plaintiff's claim under the FLSA.

## I.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean*

7

*v. 988011 Ontario, Ltd*., 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the non-moving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the non-moving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the non-moving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 431 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

## II. The Plaintiff's Claims

As noted above, the defendants have moved for summary judgment on all of the plaintiff's claims. In his Complaint, the plaintiff asserted a claim for breach of contract, because the

8

defendants supposedly terminated the plaintiff's employment in violation of the defendants' employment policies. (Docket No. 1 at 6.) There appears to be no evidence to support this claim, and the plaintiff failed to challenge the defendants' argument to that effect in his briefing. Therefore, the defendants are entitled to summary judgment on the plaintiff's breach of contract claim. The court will consider the remaining claims in turn.

### A. Age Discrimination Claim under the ADEA and THRA

The plaintiff's ADEA and THRA age discrimination claims are analyzed according to the same framework as federal discrimination claims under Title VII. *Policastro v. Northwest Airlines*, 297 F.3d 535, 538-39 (6th Cir. 2002) (ADEA); *Lynch v. City of Jellico*, 205 S.W.3d 384, 399 (Tenn. 2006) (THRA). That is, where, as here, there is no direct evidence of discrimination, a claim of age discrimination is analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Under that framework, the plaintiff must first establish a *prima facie* case of discrimination. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). If the plaintiff establishes his *prima facie* case, the defendant must articulate a legitimate, non-discriminatory reason for the employment action, which the plaintiff may rebut with evidence that the explanation is pretextual. *Id.*

In order to establish a *prima facie* case of age discrimination, the plaintiff must show (1) that he is at least forty years old; (2) that he was subject to an adverse employment decision; (3) that he was qualified for the position; and (4) that he was replaced by a significantly younger person, that is, by someone more than six years younger. *Grosjean*, 349 F.3d at 339-40. Here, there is little question that the plaintiff has established the first three elements of the *prima facie*

9

case, as he was over forty during the relevant time period, he was undoubtedly qualified for the position, and he was terminated from his job.

It is, however, important to briefly discuss the date of the plaintiff's termination. The plaintiff claims that he was terminated on November 9, 2006, that is, the date that he was injured and the date that he was taken off of the payroll. (Docket No. 82 at 8.) The defendants claim that Jackson was not terminated on November 9, in part because Jackson returned to work in the Spring of 2007. (Docket No. 77 at 11.) The defendants do not suggest a date that Jackson was terminated, but, instead, they argue that Jackson's failure to correctly identify the date of his termination means that Jackson cannot establish the *prima facie* case. (*Id*.) This argument is plainly without merit because, for purposes of establishing this element of the *prima facie* case, it only matters that the plaintiff was subject to an adverse employment decision. In the court's view, the only reasonable conclusion is that Jackson was terminated when, in response to finding out about this lawsuit, Gray ordered him off the property, that is, sometime after June 6, 2007. That is the day that Jackson stopped performing all work on behalf of Gray's Disposal and is, therefore, the only reasonable day to conclude that Jackson was terminated.[3]

That said, as is clear from the factual discussion above, the problem with the plaintiff's ADEA claim (and related THRA claim) is that the plaintiff does not have sufficient evidence that he was replaced by a significantly younger person. Indeed, the plaintiff's entire age discrimination

---

[3] In an earlier brief on a jurisdictional issue, the defendants stated that the plaintiff was terminated on November 9, 2006, a position they currently reject. (See Docket No. 36 at 4.) The plaintiff claims that the defendants are bound by this position, but, even if the defendants were bound, the court is not. The court concludes that the facts show that the plaintiff was terminated well after November 9, 2006.

10

claim is premised on his assumption that the two younger individuals he observed in the truck replaced him. In briefing, the plaintiff points to two individuals, Jocques Williams and Ronnie Greer, both of whom are in their twenties and joined Gray's Disposal prior to Jackson's injury. (Docket No. 82 at 6.) The plaintiff contends that these two individuals "absorbed the excess work created by [the plaintiff's departure.]" (*Id.* at 8.)

The evidence, however, does not support this statement. First, the evidence shows that, while Jackson was recovering, much of Jackson's route was divided up amongst various individuals of various ages at Gray's Disposal, including Richard Brooks and Doris Mayes, who were ages 41 and 69 respectively. (Docket No. 83 at 15-16.) As to Williams and Greer, they were hired before the plaintiff was injured, and Gray testified that these individuals have their own, unique routes, which they ran independently of Jackson. (Docket No. 82 Ex. 2 at 60-66.) Once Jackson returned to work, he was in the position of waiting for a truck driving opportunity to become available, but that opportunity never arrived because Gray fired Jackson when he found out about this lawsuit.

Indeed, the plaintiff failed to offer evidence that he was replaced in his role, as mechanic and truck driver, by a significantly younger person after his summer 2007 termination. That the defendants had younger employees than the plaintiff at the time the plaintiff was terminated or that younger employees substituted for Jackson while he was recovering does not make the plaintiff's ADEA or THRA claim viable. The plaintiff must present sufficient evidence that, after he was terminated, he was replaced by a significantly younger employee, and he has failed to make that showing. Therefore, the defendants are entitled to summary judgment on the plaintiff's ADEA

11

and THRA claims.

### B. Retaliatory Discharge

As discussed above, the plaintiff also claims that he was fired in retaliation for filing a workers' compensation claim. To establish a cause of action for discharge for asserting a workers' compensation claim, the plaintiff must show that (1) he was an employee of the defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for workers' compensation; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the plaintiff's employment. *Anderson v. Standard Register Co.*, 857 S.W. 2d 555, 558 (Tenn. 1993). If the plaintiff can demonstrate evidence of a causal link between the claim for benefits and the employee's discharge, then the employer has the burden to come forth with a legitimate, non-pretextual reason for the employee's discharge. *Id.* at 559.

Here, the defendants make the same incorrect argument that because "Jackson was not terminated on November 9, 2006 ... Jackson cannot make out a *prima facie* case ... " because Jackson cannot show he was terminated. (Docket No. 77 at 14.) The defendants' argument aside, it is obvious that Jackson was terminated, that he did make a claim against the defendant for workers' compensation and that Jackson was an employee at the time of the relevant injury. Therefore, the plaintiff has established three of the four elements of the *prima facie* case.

That said, the court disagrees with the plaintiff's contention that a reasonable juror could conclude that the claim for workers' compensation was a substantial factor in the termination. Again, the plaintiff argues that he was fired November 9, 2006, and, therefore, a causal connection

12

is the only "logical conclusion" because Jackson was fired on the day he was injured. (Docket No. 82 at 10.) As discussed above, the plaintiff's argument that he was fired on November 9, 2006 is simply not credible, given that the plaintiff returned to some of his job duties in the Spring of 2007, after recovering from the work-related injury. Indeed, the logical conclusion is that the plaintiff was fired in the summer of 2007, when Gray learned about the lawsuit and told Jackson to stop working and leave the job site. There is no evidence of a connection between the summer 2007 termination and the workers' compensation claim, and, therefore, the plaintiff cannot establish his *prima facie* case.[4] Therefore, the defendants are entitled to summary judgment on the plaintiff's common law retaliatory discharge claim.

### C. Fair Labor Standards Act (FLSA) Claim

The plaintiff alleges that he was not properly paid overtime for his work at Gray's Disposal, primarily focusing on the period during which he was a full-time employee, from June 2005 to November 2006. Under the FLSA, no employer shall employ a covered employee for a work week that is longer than forty hours unless that employee receives compensation for his employment that is at least one and one-half times the regular rate for all overtime hours. 29 U.S.C. § 207(a). That is, the FLSA requires employers to pay their employees "time and a half" for work performed in excess of forty hours per week. *See Wood v. Mid-America Management Corp.*, 192 Fed. Appx. 378, 379-80 (6th Cir. 2006). An employee who is not so compensated may

---

[4] Notably, no matter the date of his termination, the plaintiff has not put forth evidence to show that he was treated negatively because he filed for workers' compensation. Rather, the plaintiff's deposition testimony shows that it was Gray who encouraged the plaintiff to file for workers' compensation and who filed the paperwork for the plaintiff. (Docket No. 79 Ex. 3 at 267.)

13

sue under the FLSA to recover the overtime pay. *Id.* There is no dispute that Jackson was a "covered" employee, that is, an employee to whom the defendants would ordinarily be required to pay overtime. There is also no dispute that the defendants did not pay Jackson overtime; instead, they paid Jackson a variable, semi-monthly salary, along with assorted cash and check payments that were not tied to the number of hours Jackson worked.

The defendants argue that they are entitled to summary judgment on the plaintiff's FLSA claim for two reasons. First, they claim that Jackson has not sufficiently shown that he worked overtime and, second, they claim that they did not have sufficient knowledge of any overtime that Jackson worked. (Docket No. 77 at 15-19.) The court will consider each argument in turn, concluding that, within both of these claims, there are disputed issues of material fact that preclude summary judgment for the defendants on the plaintiff's FLSA claim.

First, the hours that Jackson actually worked, perhaps the most important issue when evaluating a claim for overtime pay, present a genuine issue of disputed material fact. Jackson, armed with only his memory, claims that his hours, of course, varied, but, on average, he worked approximately sixty hours per week, or twenty hours of overtime on a "routine" week. (Docket No. 82 at 14.) In his summary judgment response brief, the plaintiff summarized his position on the number of hours per week that he worked:

> "Jackson testified that an average day driving a truck and doing his route, Monday through Friday, was eight or eight and [a] half hours a day, and sometimes he worked Saturdays. He often worked through lunch and just ate in his truck, and never did stop to get anything to eat. He would not take breaks. However, Jackson's day was not done when the truck driving was over. When he finished running the route he would then go and do maintenance work on the truck fleet. Jackson often worked weekends to do the necessary maintenance work. He would

14

> go in on Saturdays around 11:00 a.m. and leave at 4:00 or 5:00. He would go in on Sundays, sometimes around 9:00 and work all day. He worked 60 hours a week, doing his routes and mechanic work. In order to do his maintenance work, he had extra time factored in beside just the time to perform the task. He would have to call Mr. Gray, get a check to pay for the parts, and go to the store and buy the parts." (Docket No. 82 at 14-15) (internal citations omitted)

The defendants have little documentation with which to counter the plaintiff's claims, because the defendants apparently maintained no records of the hours that their employees worked and there was no time reporting system. Under the FLSA, it is the employer's duty to maintain and preserve a set of records indicating the hours that each employee worked during the day. 29 U.S.C. § 211(c).

The defendants argue that, "though Gray's did not keep daily time sheets, it relied upon the disposal tickets maintained by the disposal companies. These tickets contain the employees' signatures and the dates and times of the employees arrival [at the disposal site]. Gray's is able to use the disposal tickets to determine the amount of time employees work each day ... ." (Docket No. 77 at 16.)

As noted in the factual discussion, the defendants argue that, by accepting the plaintiff's claimed start time as true and by adding two hours to the time reflected on the dump ticket, they can determine that the plaintiff may have worked overtime for thirteen weeks total over the summers of 2005 and 2006, and only six weeks total if a one-hour break is factored in. (Docket No. 77 at 3, 16.) The defendants argue that even this conclusion is generous because it is only based on the "illogical contention" that the plaintiff started his days in the summer at 4 a.m. (*Id.* at 17-18.) Therefore, the defendants argue, the court can safely conclude, as a matter of law, that the

15

plaintiff did not work overtime.

This "dump ticket" argument is unconvincing. Gray testified at his deposition that Gray's Disposal keeps some of the dump tickets in a "filing cabinet," but there was no requirement that employees turn in dump tickets. (Docket No. 82 Ex. 1 at 84-85.) Further, even if the defendants were able to locate all of Jackson's dump tickets, using the dump tickets is a nonsensical way to determine the hours that Jackson worked because the dump tickets do not reflect when Jackson started or stopped working for the day. The defendants' addition of two hours (minus a one-hour break) to the time on the dump ticket is arbitrary; the defendants have no legitimate evidence that refutes the plaintiff's claims, even though it was always the defendants' responsibility to maintain a record of the hours that Jackson worked.[5]

The defendants, apparently recognizing the problem created by their failure to maintain a time-keeping system, argue that they were not aware that Jackson was working overtime and are, therefore, not responsible for paying Jackson overtime as a matter of law. (Docket No. 77 at 19; Docket No. 90 at 7-8.) For instance, the defendants argue that, "if Jackson believed that he had worked overtime, he would have informed Mr. Gray. Jackson, however, never told Gray what time he started to work and never told Gray that he [Jackson] was working overtime and not being compensated." (Docket No. 90 at 8.)

---

[5] The court recognizes the defendants' argument that, in his deposition, Jackson was not always consistent about the number of hours and days that he worked. The court views much of the inconsistency as being caused by the multiple time periods and types of work being discussed at Jackson's deposition. Under straightforward examination designed to summarize his testimony, however, Jackson testified that he generally worked about sixty hours per week, that is, 45-50 hours driving the truck and 10 hours doing mechanic work. (Docket No. 79 Ex. 3 at 340-42.)

16

Under the FLSA, an employee must be compensated for the time that he works outside of his scheduled shift, even if the employer does not ask the employee to work during that time, but this requirement only applies if the employer knows or has reason to believe that the employee is working the overtime hours and the work was "suffered" or permitted by the employer. *Wood*, 192 Fed. Appx. at 380. That is, the employer cannot be forced to pay overtime for work that it had no way to know was being performed, or for work that the employer tried to prevent from occurring. *Wood*, 192 Fed. Appx. at 379-80 (denying overtime recovery to an employee who was paid for overtime that he did report on his timecard and who subsequently claimed that he was entitled to overtime pay for duplicate overtime work that he had not reported). It is the employee's duty not to "undermine" the employer's efforts to comply with the FLSA, and an employer is not liable for overtime work that it had "no reason" to know was being performed. *Id.*

That said, the defendants' actual or constructive knowledge of the plaintiff's hours presents another genuinely disputed issue of material fact. The plaintiff states that he started work at essentially the same time every morning (usually by picking up his truck from the defendants' lot) and ended the day by being dismissed by his supervisor, which indicates that the defendants had a reasonable opportunity to learn if the plaintiff was working overtime. There is no indication that the plaintiff was attempting to hide the hours he was working or in any way "undermine" his employer's efforts to comply with the FLSA. Rather, it was the employer who failed to take steps to comply with the FLSA, as basic, established means for calculating time such as the "time card" or the "punch clock" were not available at the job site.

Therefore, the hours that the plaintiff actually worked and the defendants' actual or

17

constructive knowledge of those hours remain genuinely disputed issues of material fact.

Therefore, the defendants are not entitled to summary judgment on the plaintiff's FLSA claim.[6]

## III. Motion to Strike

The plaintiff also moved to strike certain exhibits to the defendants' Motion for Summary Judgment, specifically the dump tickets that the defendants filed along with their Motion for Summary Judgment, and the calendar that the defendants prepared with their estimation of the hours that the plaintiff worked based on the time stamp on the dump tickets. The plaintiff moved to strike these exhibits arguing that they are unauthenticated hearsay, which, even if admissible, should have been provided to the plaintiff earlier in discovery. (*See generally* Docket Nos. 80-81.)

The court has generally reviewed the information in the dump tickets and the defendants' arguments regarding the dump tickets and has concluded that, as discussed in detail above, even if the dump tickets were valid summary judgment evidence, they would not aid the defendants' position on summary judgment. Therefore, the motion to strike will be denied as moot. If the plaintiff objects to the admission of the dump tickets at trial, he may file a motion in limine, which the court will analyze under the Federal Rules of Evidence. If the plaintiff feels the need to re-open discovery concerning the dump tickets, he should file a motion so requesting at an early date.

---

[6] The defendants also argue, without relevant citation, that because Jackson was paid for his mechanic work and Saturday truck driving "by the job" this work is not "compensable overtime." (Docket No. 77 at 19.) This argument is without merit. This work was performed on behalf of Gray's Disposal just as the Monday through Friday truck driving was and is subject to the same FLSA rules.

18

## CONCLUSION

For the reasons expressed herein, the defendants are entitled to summary judgment on the plaintiffs' ADEA, THRA, breach of contract and retaliatory discharge claims. The defendants are not entitled to summary judgment on the plaintiff's FLSA claim. Therefore, the defendants' Motion for Summary Judgment will be granted in part and denied in part. Further, the plaintiff's Motion to Strike will be denied as moot.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

19

Case 3:07-cv-00614   Document 93   Filed 03/11/09   Page 19 of 19 PageID #: 1944

## CONCLUSION

For the reasons expressed herein, the defendants are entitled to summary judgment on the plaintiffs' ADEA, THRA, breach of contract and retaliatory discharge claims. The defendants are not entitled to summary judgment on the plaintiff's FLSA claim. Therefore, the defendants' Motion for Summary Judgment will be granted in part and denied in part. Further, the plaintiff's Motion to Strike will be denied as moot.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge